UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

United States of America

        v.

Laurence Savedoff,

                Defendant.

**Decision and Order**

16-CR-41G

---

## I.   INTRODUCTION AND BACKGROUND

On April 18, 2017, defendant Laurence Savedoff ("Savedoff") filed a motion to compel discovery from the Government under Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure. (Dkt. No. 83.) The discovery in question is a hard drive that a woman named JaLynda Burford ("Burford") turned over voluntarily to the Government. Burford is a former employee of a mortgage lender called The Funding Source ("TFS"), an alleged victim of Savedoff and the other defendants in the case. Toward the end of her time at TFS, Burford allegedly was asked by company officials to destroy a range of documents and email messages in her possession. Burford did not do so and preserved them on an external hard drive, the hard drive now in question.

Savedoff wants a copy of the hard drive because it might provide documentary evidence that TFS owners and employees defrauded banks in ways that resemble the fraudulent conduct lodged against him in the indictment. Specifically, "[t]he agents [investigating TFS in a separate matter] interviewed witnesses who stated that TFS owners and employees actually participated in that same fraudulent conduct. If TFS and its employees were complicit in the offense, the theory of the indictment is false and the defendants could not be convicted of defrauding a conspirator.

The Government concedes that it presently anticipates it will call a representative of TFS as a government witness at trial. The defense can use the information that TFS sought to destroy to confront and cross-examine that witness at trial." (Dkt. No. 91 at 3–4.) To the extent that Burford has expressed privacy concerns to the Government—the hard drive in question apparently contains music files, personal email messages, and other personal documents that have nothing to do with the case and that Burford just happened to keep on the same storage medium—Savedoff believes that the protective order already in place (Dkt. No. 20) suffices to address those concerns.

The Government has responded to Savedoff's motion in two ways. With respect to the substance of Savedoff's characterization of "unclean hands" conduct at TFS, the Government asserts that "whether or not The Funding Source was involved with the fraud is irrelevant to whether or not the defendants committed the mortgage fraud charged in the indictment." (Dkt. No. 89 at 3.) Nonetheless, the Government is not opposed to sharing information on the hard drive that might have some bearing on this case, regardless of its position on how relevant that information really is. Specifically, the Government has offered to share an exact copy of a folder on the hard drive labeled "TFS"; to run searches of email messages in another folder labeled "All Other," based on terms that Savedoff proposes; and to have defense counsel come to its office to review the entire hard drive. Savedoff has rejected the Government's offer. Savedoff believes that the hard drive in its entirety falls under Rule 16(a)(1)(E), meaning that he is entitled to see it in its entirety and is not limited to the Government's decisions about what might be relevant. Savedoff also objects that giving the Government search terms for the email messages would improperly reveal his potential defense strategies.

The Court held oral argument on May 17, 2017. At oral argument, the Government provided a clarification of an issue that the parties had addressed in their motion papers—the issue of imaging. Law enforcement agents wound up visiting Burford twice, in 2013 and 2016. Agents copied Burford's hard drive each time, the latter copy being obtained to see whether any changes had been made compared to the 2013 copy. Until oral argument, the parties appear to have assumed that the copies made of Burford's hard drive were forensic copies or mirror images of the hard drive. At oral argument, the Government confirmed that the 2013 and 2016 copies of the hard drive are not images but only copies of files made by ordinary means—for example, through the standard copy utility of a typical computer operating system.

## II. DISCUSSION

"Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). "Materiality, of course, must be assessed against the backdrop of all the evidence presented to the jury. It has been said that [m]ateriality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (internal quotation

3

and editorial marks and citation omitted). At the same time, "[e]vidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993) (citations omitted).

Here, the 2013 and 2016 copies qualify as either electronic documents, or as tangible objects in connection with the original hard drive. The original hard drive was returned to Burford, but the 2013 and 2016 copies are in the Government's possession, and the Government has not demonstrated how its possession changes because Burford produced the hard drive voluntarily and not through compulsory means. *See United States v. Nicholas*, 594 F. Supp. 2d 1116, 1129 (C.D. Cal. 2008) (interest in confidentiality of certain email messages yields to the defendant's right to access information critical to the preparation of his defense). With respect to materiality, the record indicates that law enforcement agents have coordinated interviews and investigations in this case and in a separate case against TFS. The coordinated investigations have included statements from former employees and owners of TFS "that fraud was rife at TFS and that its owners directed the staff to falsify documents so as to ensure that loans could be approved and that TFS would thereby profit." (Dkt. No. 83-1 at 3.) The interviewees have pointed at Burford as someone who maintained documents related to the fraud. (*See id.*) How the alleged fraud at TFS related to some of the fraud allegations in the indictment is not quite clear from the record, and Savedoff will need to explore that relationship. For example, the indictment generally implies that the fraud that it describes proceeded strictly in series, from the defendants to TFS to the banks that were the end purchasers. (*See, e.g.*, Dkt. No. 1 at 4.) The indictment implies that

each person or entity at each step in that series had clean hands and relied completely on the work product prepared by the person or entity at the previous step. Nonetheless, other language in the indictment does not rule out the possibility that the series of steps of the alleged fraud was not completely linear—take, for example, the allegation that Savedoff "used and directed his assistant, an individual known to the Grand Jury but not indicted herein, to handle aspects of real estate transactions involving mortgage loans originated by TFS and EPIX which are the subject of this indictment." (*Id.*) That language could be read to mean that some level of active collaboration existed between Savedoff and TFS; combined with statements from interviewees that TFS employees were aware of ongoing fraud, this information raises the possibility that TFS was aware of problems with documents coming from Savedoff and others but endorsed the work product anyway. *Cf. United States v. Holihan*, 236 F. Supp. 2d 255, 262 (W.D.N.Y. 2002) (finding as discoverable information that reasonably could call into question the reliability of certain documents and thus reduce their potential probative value for the jury). Savedoff should have a chance to explore this possible defense theory. Additionally, while the Government is not required to disclose trial witnesses at this time, there would seem to be a significant chance that Burford and the interviewees will be called as witnesses and that information from the hard drive will make its way to the Government's case-in-chief. All of these factors make production of both entire copies appropriate. *See United States v. Armstrong*, 517 U.S. 456, 463 (1996) (Rule 16 does not reach documents material to the preparation of selective-prosecution claims but does authorize defendants "to examine Government documents material to the preparation of their defense against the Government's case in chief"). The Government reasonably has raised concern about

Burford's personal information, but the personal information of third parties pervades this case. A trial over fraudulent mortgage applications necessarily will require some discussion of personal information and financial status for many third parties. That is why a protective order already exists in this case; with one exception explained below, the protective order already in place suffices to allay the Government's concern.

The Court will make one temporary adjustment to the protective order to address the Government's discussion at oral argument of some of the very personal information that Burford had on the hard drive. The hard drive apparently contains information from Burford's life that was not related to her work as TFS—information such as music files, personal tax returns, and email messages to and from friends and family. The Court cannot discern from the record how much of this otherwise very personal information was generated or modified at the TFS office and whether it somehow would be intertwined with other, more relevant information. To try to strike a balance between any privacy concerns and Savedoff's ability to search the hard drive without revealing strategy, the Court will require for now that the entirety of the 2013 and 2016 copies be restricted to attorney eyes only. Once Savedoff's counsel have examined the copies, they may seek permission from the Court to share specific documents with their client.

III. CONCLUSION

The Court grants Savedoff's motion to compel (Dkt. No. 83) in part, on an attorney-eyes-only basis, as explained above. The motion is denied in all other respects, including the request for mirror images of the Burford hard drive, since the Government appears never to have had any mirror images in its possession.

As the Court noted at oral argument, the parties will return on June 20, 2017 to discuss what scheduling will be needed after the hard drive production.

SO ORDERED.

                                      __/s Hugh B. Scott_____
                                      Hon. Hugh B. Scott
                                      United States Magistrate Judge

DATED: May 23, 2017